IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

|  |  |
|---|---|
| _____ | |
| **ERIC P. TURNER** ) | Civil Act. No. |
| ) | Dated April 11, 2025 |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | |
| ) | Demand for Jury Trial |
| ) | |
| **MYERS & MYERS, PLLC, JUDY** ) | |
| **WHEELER (as the trustee of the Helen R.** ) | |
| **Wheeler Trust), JOSEPH WHEELER,** ) | |
| **DENISE R. KETCHMARK (as guardian for** ) | |
| **JOSEPH WHEELER), RICHARD** ) | |
| **KRAUSE, TONYA KRAUSE, SENARA R.** ) | |
| **DOLLAR, and KRISTYN R. MATTERN** ) | |
| | |
| **Defendants.** | |
| _____ | |

# COMPLAINT

1. The Plaintiff, Eric P. Turner (hereinafter referred to as "Plaintiff Turner" or "Mr. Turner"), is an individual and a resident of the State of Michigan. Mr. Turner resides at 7537 East Lake Drive, Brighton, MI 48114.

2. The Defendant, Myers & Myers, PLLC, is a law firm based in Howell, Michigan and whose last known business address is 915 N. Michigan Ave # 200, Howell, MI 48843.

3. The Defendant, Judy Wheeler (as the trustee of the Helen R. Wheeler trust) (hereinafter referred to either as "Judy Wheeler" or "Defendant Judy Wheeler"), is an individual and a resident of the State of Georgia and whose last known address is 395 Shagbark Way, Harlem, Georgia 30814.

4. The Defendant, Joseph Wheeler (hereinafter referred to as either "Mr. Wheeler," "Joseph Wheeler," or "Defendant Joseph Wheeler"), is an individual and a resident of the State of

1

    Michigan and whose last known address is 1290 Pond Bluff Way, Brighton, Michigan 48114.

5. The Defendant, Denise R. Ketchmark (hereinafter referred to as "Ms. Ketchmark"), is an individual and a resident of the State of Michigan.  Ms. Ketchmark, whose last known business address is 1116 S. Linden Road, Suite 14, Building E, Flint, Michigan, 48532, is the lawfully appointed guardian of Joseph Wheeler per a duly authorized probate court proceeding in Livingston County in the State of Michigan.

6. The Defendant, Richard Krause (hereinafter referred to as "Defendant Richard Krause" or "Richard Krause"), is an individual and a resident of the State of Michigan and whose last known address is 1310 Pond Bluff Way, Brighton, Michigan  48114.

7. The Defendant, Tonya Krause (hereinafter referred to as Defendant Tonya Krause" or "Tonya Krause"), is an individual and a resident of the State of Michigan and whose last known address is 1310 Pond Bluff Way, Brighton, Michigan  48114.

8. The Defendant, Senara R. Dollar (hereinafter referred to as "Defendant Dollar"), is an individual and a resident of the State of Michigan.  Defendant Dollar is employed as an associate attorney by the Defendant Myers & Myers, PLLC, and whose last known business address is  915 N Michigan Ave # 200, Howell, MI 48843.

9. The Defendant, Kristyn R. Mattern (hereinafter referred to as "Defendant Mattern"), is an individual and a resident of the State of Michigan.  Defendant Mattern is employed as an associate attorney by the Defendant Myers & Myers, PLLC, whose last known business address is  915 N Michigan Ave # 200, Howell, MI 48843.

## **JUSRISDICTION AND VENUE**

10. The Court has jurisdiction in this matter under 28 U.S.C. § 1332(a) because Defendant Judy Wheeler has citizenship diverse from the Plaintiff, and the amount in controversy, exclusive of interest, exceeds Seventy-Five Thousand ($75,000.00) Dollars.

11. The Court also has jurisdiction in this matter under 28 U.S.C. § 1331 because of the related Federal civil mail and wire fraud claims under 18 U.S.C. §§ 1341 & 1343.

12. Venue is proper in the United States District Court for the Eastern District of Michigan Southern Division pursuant to 28 U.S.C. § 1391 (a) and (b) and because most of the Defendants are residents of the State of Michigan and a substantial part of the events giving rise to the claims occurred within the district.

# **FACTS**

13. Mr. Turner purchased his home in Brighton, MI, in August 2017. This home is located in a small subdivision (known as "Hidden Ponds") of approximately 30 homes on lots ranging in size from 2 - 4 acres with a natural setting amongst several ponds, a lake & adjacent wetlands. Most of the homes are located on two parallel cul-de-sacs which are separated by several ponds and adjacent wetlands. The ponds and adjacent wetlands are protected natural areas under local municipal ordinances and state law, all of which are clearly & repeatedly referred to in the subdivision by laws. A map showing the relevant property locations of Plaintiff Turner and Defendants Joseph Wheeler and Richard & Tonya Krause in this subdivision is attached as Exhibit A.

14. Mr. Turner, after dealing with the passing of his elderly parents (who lived in Minnesota where Mr. Turner grew up), decided to improve & beautify his yard in early 2023 & made plans including: 1) removing a large rotting wooden & plastic playground set; 2) removing a loose gravel floor beneath the playground area & replacing it with sod; 3) partially clearing a portion of his wooded yard lying beyond his established grass lawn; and 4) planting various natural wildflowers, ornamental grasses and other shrubs & trees in the partially cleared area.

15. In late 2022 & early 2023, Mr. Turner coordinated his yard improvement plans with his immediate adjacent neighbors on his cul-de-sac and several of his neighbors agreed to use the contractor that Mr. Turner was planning to use for his yard beautification plans to collectively reduce their costs by having the work done at the same time. Mr. Turner also spoke with Mr. Wheeler, who lives behind Mr. Turner on the parallel cul-de-sac on the other side of the pond & wetlands between their homes. Mr. Turner briefly met with Mr. Wheeler at his home and was granted permission to briefly enter his backyard to view Mr. Turner's rear yard across the pond & wetlands which separated their yards (& respective cul-de-sacs). Mr. Wheeler expressed no interest in Plaintiff Turner's yard improvement plans and made no mention of any yard boundary or other related concerns during their initial meeting at Mr. Wheeler's home. Based upon Mr. Turner's review of the subdivision land plots map and discussions with his neighbors on his cul-de-sac, Mr. Turner believed that he owned the land behind his home generally down next to the pond behind his home, especially where a rural pathway to the pond existed when Mr. Turner purchased his home.

16. Mr. Wheeler's parents built their home in approximately 1999, and he lived there with them continuously until his parents died approximately 20 years later.

17. Mr. Wheeler (who testified that his alias is the "dope fiend") has a reputation in the subdivision community as an odd character & is a difficult individual, who often complains about his neighbors and was generally anti-social. He often inappropriately uses obscene language when interacting with others. He had complained about excessive noise & street parking issues when an adjacent next door neighbor had a wedding &

3

reception for their daughter in their backyard.  He had also confronted other neighbors when they were fishing in the pond behind his home and falsely claimed that he owned the pond behind his home & fish therein.  Pursuant to long established Michigan law, a landowner may own the land beneath a pond and wetlands next to his home but does not own the actual pond & adjacent wetlands, which are protected common wetland areas according to local municipal ordinances and State of Michigan law.

18. On February 13, 2023, Mr. Turner hired a local crew with a grinding machine to partially clear and grind up various dead trees, small trees, brush & scrub on parts of his wooded lot as part of his planned yard beautification project.  While the crew was working,  Mr. Wheeler exited his home and came onto Mr. Turner's property complaining about the process to Mr. Turner in an irate & profane manner.  Mr. Turner sought to engage Mr. Wheeler to understand his overall and apparent privacy concerns but he was acting irrationally and using profane language.  Mr. Turner informed Mr. Wheeler that he had no desire to improperly damage his property or to intrude into his privacy.  The parties also discussed where they each believed that the property boundary was between our respective homes but it immediately became clear that Mr. Wheeler had no personal knowledge of the exact legal boundary line of his yard and was generally confused about legal matters & property rules.  As there were no existing visible formal property line demarcations, the parties could not agree on their land boundaries.  Nevertheless, Mr. Turner specifically identified certain dead trees, brush & scrub in an area next to the pond (approximately 4 feet wide and 20 feet long) and received explicit oral permission from Mr. Wheeler to clear the area and he then left.  Without any actual knowledge of Mr. Wheeler's ongoing severe & acute schizophrenic mental health conditions and other issues (described in more detail below), Mr. Turner relied upon this prior express consent granted by Mr. Wheeler for the planned yard beautification project and cut & removed a small amount of dead trees, brush and scrub from the small identified area on Mr. Turner's side of the pond pursuant to the earlier express permission granted to him.

19. From February 13, 2023, until April 14, 2023, there were no additional communications of any kind between Mr. Turner and Mr. Wheeler.  During this period,  Mr. Turner and a contractor spread out the previously ground up debris from dead trees, brush & scrub left by the grinding machine on his property, removed several tree stumps on his yard and continued with his yard beautification plans with no complaints from anyone.  Numerous members of the subdivision actually complimented Mr. Turner about his yard beautification endeavors and were pleased with his efforts.

20. On the morning of April 14, 2023, Mr. Wheeler exited his home and inexplicably & intentionally lit a large uncontrolled wildfire using a combustible liquid in the wetlands behind his home adjacent to the pond between his home and Mr. Turner's property.  Mr. Wheeler acted alone and in an extremely careless manner without any appreciation of the overall hazardous nature of his activities. No appropriate safety or fire control devices were used and the fire soon engulfed the entire wetlands behind his home & raged out of control for several minutes.  While this uncontrolled wildfire was raging and also spewing burning embers skyward (potentially allowing the uncontrolled wildfire to spread

elsewhere), Mr. Wheeler then entered Mr. Turner's property on his side of the pond between their homes & attempted to unlawfully light the wetlands & wooded areas of Mr. Turner's property on fire. Mr. Turner, who was working at home at the time, then noticed the bright light & fire in the rear area of his yard on Mr. Wheeler's property.

21. Mr. Turner immediately exited his home and traveled to the rear of his yard. Mr. Turner confronted Mr. Wheeler about the large uncontrolled wildfire in the wetlands & wooded areas and expressed alarm about his hazardous activities. This extremely hazardous & dangerous act (which Mr. Wheeler later admitted to police, was cited by police for violating local fire ordinances and also agreed to never to do again) was even more unusual & inexplicable given that the Mr. Wheeler was attempting to light some of the wooded areas next to the pond that he had previously informed Mr. Turner that he wanted to remain in a natural state so as to block the views of each other's home when looking across the pond & wetlands. When Mr. Turner approached Mr. Wheeler & inquired about his hazardous & dangerous conduct, it immediately became apparent that Mr. Wheeler was acting in an incredibly incoherent & discombobulated manner. Mr. Wheeler was also screaming about "blueberries" for some unknown reason. Mr. Wheeler also stated that he was lighting these fires as part of an effort to "clean up" the area pursuant to an earlier discussion he had with his adjacent neighbors, Mr. & Mrs. Richard and Tonya Krause.

22. Mr. Turner specifically & directly told Mr. Wheeler that his lighting of the uncontrolled wildfires was extremely dangerous and that he should immediately cease such activity. Mr. Wheeler then immediately ceased his activities & retreated into his home where he generally remained for the rest of that day.

23. Afterwards, Mr. Turner informed the neighbors in his cul-de-sac of Mr. Wheeler's bizarre conduct and everyone was aghast by these events as they viewed the burnt wetlands & learned of his dangerous & hazardous conduct.

24. Mr. Turner and Mr. Wheeler had no further interactions or communications of any kind until Mr. Turner was served with a copy of the summons and complaint on May 12, 2023, in a state civil action dated May 12, 2023 - State of Michigan, Livingston County Circuit Court (Docket No. 23-31858 CZ). In this state circuit court complaint, which was filed by Defendant Dollar, Mr. Wheeler and Richard & Tonya Krause alleged that Mr. Turner had trespassed upon their properties and improperly cut down trees, brush and foliage in the disputed small area and dug up & removed soil from their properties. Defendant Mattern also participated in this action when Defendant Dollar was on leave.

25. Accompanying the complaint was a Temporary Restraining Order issued by the Circuit Court judge and a Show Cause hearing set for May 26, 2023, all of which had been obtained by Defendant Dollar in an extraordinary *ex parte* filing submission without any prior notice to Mr. Turner.

26. On the early morning of May 18, 2023, Richard and Tonya Krause commissioned a lot boundary survey by Boss Engineering to determine the yard boundaries between the

5

parties' lots.  Mr. Wheeler, Richard Krause, and a large contingent of other residents of the subdivision were present for parts of the survey process – all of whom initially met earlier at the home of Mr. Wheeler before then traveling to the rear of the parties' lots to watch the survey process.

27. As the survey process began, Mr. Wheeler was visibly & grossly impaired, disheveled in his overall appearance, barely functioning in a highly vegetative manner and could barely stand or speak as Mr. Turner watched & listened a short distance away from his property. Mr. Wheeler only stayed for a brief period of the border survey process that took several hours.  This survey confirmed that there was no damage to the Krauses' property and there was a small partially cleared area on the Wheeler property adjacent to the pond.  This area was approximately 4 feet by 20 feet and coincided with the area that Mr. Wheeler had previously & expressly granted permission to Mr. Turner to partially clear of dead trees, brush & scrub.  The survey crew and Richard Krause also visibly trampled on the Krause property causing damage to the natural vegetation on the corner of the Krause property.

28. At the Show Cause hearing on May 26, 2023, Mr. Turner, a licensed attorney who works as a tax attorney, appeared on his behalf and explained what had transpired.  Mr. Turner also submitted a personal affidavit setting forth recent events.   During the Show Cause hearing, the judge specifically acknowledged on the record that the Temporary Restraining Order had been improperly sought & issued because there was no required irreparable injury and that she had not fully read the *ex parte* filing submitted by Defendant Dollar before signing it.

29. At the beginning of the Show Cause Hearing, the judge specifically asked Defendant Dollar why Mr. Wheeler was not present in the court for, *inter alia*, witness evaluation purposes given that the issue of prior consent by Mr. Wheeler had been raised in Mr. Turner's formal response for the Show Cause hearing.  Defendant Dollar simply stood mute and offered no response to the judge's specific inquiry.  Defendant Dollar then offered a pre-prepared affidavit of Mr. Wheeler but the court refused to accept it or allow it into evidence.  Finally, as part of the 3-hour hearing, it later became clear that Defendant Dollar also had filed three separate additional motions for Personal Protection Orders against Mr. Turner (on behalf of Mr. Wheeler and Richard & Tonya Krause) which had never been served upon Mr. Turner.  Notwithstanding these additional & materially significant *ex parte* communications (which the judge had read & considered yet were not part of the official court record), the judge imposed a comprehensive restraining order upon Mr. Turner's movement in the subdivision which remains in effect to this day.

30. At the Show Cause hearing, Mr. Turner specifically raised the issue who was the proper party for any civil action since the property where Mr. Wheeler lives was owned by a trust (the Helen R. Wheeler trust); hence, the proper legal party for Mr. Wheeler's alleged claim was Judy Wheeler, as the trustee of the Helen R. Wheeler trust.   Afterwards, Mr. Turner filed a timely answer and various counterclaims.  Defendant Dollar later filed an amended complaint in early June 2023 adding Judy Wheeler, as the trustee of the Helen R. Wheeler trust, as an additional plaintiff and the litigation proceeded & continues to this day.

31. In response to Mr. Turner's filing of various counterclaims, Defendant Dollar sent Mr. Turner a letter dated June 16, 2023, claiming that his counterclaims were frivolous and specifically threatened him with sanctions, costs, etc., and to report him to the State of Michigan bar for professional misconduct unless he withdrew his counterclaims.  Mr. Turner did not withdraw his counterclaims, which infuriated Defendant Dollar, but she made no related filings.  Defendant Dollar filed a motion for summary disposition months later but decided not to pursue it after receiving Mr. Turner's formal response, which included detailed pictures and other evidence supporting his counterclaims.

32. Judy Wheeler (as the trustee of the Helen R. Wheeler trust), has known for decades that her nephew, Mr. Wheeler, suffers from an advanced and acute form of schizophrenia.  Mr. Wheeler, who currently is approximately 52 years old, was first diagnosed with schizophrenia approximately 30 years ago when he was approximately 22 years old.  Mr. Wheeler's lifelong adult mental health issues were a significant basis for the creation of the Helen R. Wheeler trust, which, *inter alia*, owns & manages the house located at 1290 Pond Bluff Way, Brighton, MI  48114, where Mr. Wheeler currently resides alone.

33. As the result of his lifelong form of advanced and acute schizophrenia, Mr. Wheeler experiences periodic hallucinations and regular psychotic episodes, especially when he does not take his medically prescribed pharmaceutical medicines.  Ms. Ketchmark, as the lawfully appointed guardian for Mr. Wheeler, testified that many of the things that Mr. Wheeler says "are not necessarily backup up in truth" even when he is taking his prescribed pharmaceutical medicines.  When Mr. Wheeler fails to take his prescribed pharmaceutical medicines, his overall conduct becomes even more problematic and divorced from reality as described below.

34. On April 10, 2023, Judy Wheeler filed a formal petition in the State of Michigan Livingston County Probate Court for the Involuntary Commitment of Mr. Wheeler (her cousin) because she was concerned about his overall behavior and conduct.  Mr. Wheeler's inexplicable & hazardous lighting of the uncontrolled wildfire on his property and attempted lighting of the wetlands and wooded area of Mr. Turner's property on April 14, 2023, which demonstrates that he is also a danger to the community at large according to Ms. Ketchmark, obviously was not listed in her petition for Involuntary Commitment.

35. According to Judy Wheeler's probate court filing for the Involuntary Commitment of Mr. Wheeler, Mr. Wheeler abruptly ceased taking his lifelong prescription of various pharmaceutical medicines for his advanced & acute schizophrenia in December 2022 after he had self-diagnosed himself to be "normal."  Immediately afterwards, Mr. Wheeler began a series of highly aberrant episodes of bizarre & violent behavior according to Judy Wheeler, who was then managing his finances as the trustee of Helen R. Wheeler trust.  According to Judy Wheeler's probate court filings, Mr. Wheeler's conduct following his abrupt December 2022 cessation of his comprehensive prescribed pharmaceutical medicine regime for his acute & advanced schizophrenia, included, but were not limited to: 1) threatening to rape & kill his aunt Judy Wheeler (who was administering his

7

finances at the time); 2) totaled his automobile; 3) had to physically removed by police from a bank lobby after he attempted to withdraw a large sum of money from a trust account without prior authorization for unsupervised & non-approved purchases; 4) informed the Social Security Administration that he was now "normal" and no longer needed Social Security Supplemental Income disability payments (which he had been receiving for decades due to his debilitating mental health issues); 5) attempted to cancel his homeowner's insurance without any new replacement insurance; 6) appeared at his attorney's office without an appointment and sought immediate access to privileged and confidential information without appropriate permission; and 7) falsely accused his aunt Judy Wheeler and others of stealing monies from him.

36. Judy Wheeler's Involuntary Commitment petition for Mr. Wheeler was immediately granted and Mr. Wheeler was involuntarily detained at his home by a coordinated police and an ambulance crew on April 18, 2023, in an extraordinary public restraint exercise and immediately taken to a psychiatric hospital in the State of Michigan for mental evaluation. Soon after his arrival at the court-ordered psychiatric hospital, Mr. Wheeler was determined to be legally incapacitated on or about April 20, 2023, by his attending physicians at the psychiatric hospital based upon their in-person evaluation of Mr. Wheeler. Mr. Wheeler's legal incapacity medical diagnosis was formally documented in Mr. Wheeler's medical file, including his ongoing hallucinations and bi-polar condition.

37. On May 4, 2023, Judy Wheeler also formally instituted Livingston County probate court proceedings in the State of Michigan for the Appointment of a Legal Guardian for an Incapacitated Individual for Mr. Wheeler. In addition, on May 5, 2023, Judy Wheeler also filed a separate petition for a Personal Protection Order against Mr. Wheeler in the Probate Court of Livingston County in the State of Michigan and this was later granted.

38. Mr. Wheeler was eventually released from the court-ordered psychiatric hospital in May 2023 after several weeks of involuntary confinement and vigorous anti-psychotic drug treatment. He then returned to his home in Brighton with a prescribed pharmaceutical drug regime including both monthly pharmaceutical injections and daily prescription drugs that he is supposed to personally ingest to control his behavior & conduct – a periodic pharmaceutical drug medicine regime that continues to this day.

39. It now has become apparent that the reason for Mr. Wheeler's grossly impaired, vegetative & disheveled appearance at the Boss Engineering survey on May 18, 2023, was due to his prior involuntary confinement in a psychiatric hospital, which began on April 18, 2023, and the overwhelming & ongoing debilitative effects of the intense pharmaceutical medicine regime that he had been given while involuntarily institutionalized for several weeks and his ongoing outpatient pharmaceutical medications.

40. Given Mr. Wheeler's legal incapacity diagnosis on April 20, 2023, by his attending physicians at the psychiatric hospital, he was mentally incapable of voluntarily and affirmatively understanding the full nature of the civil litigation that had been commenced in his name together with the Krauses. Defendants Richard & Tonya Krause, together

with Defendant Dollar, had actual prior knowledge of the mental incapacity of Mr. Wheeler and his recent involuntary confinement in a psychiatric hospital and knowingly took advantage of his diminished mental state when they filed the above mentioned civil action on May 12, 2023. At the time of the filing of this complaint, Mr. Wheeler was either still involuntarily institutionalized at the psychiatric hospital or had just been released days earlier after a multi-week involuntary hospitalization with an intensive & debilitating pharmaceutical drug medicine regime.

41. On May 11, 2023, Judy Wheeler's formal guardianship petition for Mr. Wheeler was granted and local attorney James Shay of Pinckney, Michigan, was appointed as his guardian ad litum on that date. Mr. Wheeler initially contested the appointment of a guardian but he and his legal counsel later voluntarily agreed to the appointment of a guardian for himself in early August 2023.

42. On August 9, 2023, Ms. Ketchmark – a local attorney based in Flint, Michigan, who specializes in these matters, was formally appointed as the guardian of Mr. Wheeler for his overall "medical care and legal issues. " Ms. Ketchmark is currently the lawful guardian for Mr. Wheeler. The guardianship order further specifically provides that Ms. Ketchmark is in charge of Mr. Wheeler's overall "legal issues and financial affairs."

43. As mentioned earlier, on May 12, 2023, after the appointment of the initial guardian ad litem for Mr. Wheeler, Defendant Dollar, acting as counsel of record for Richard and Judy Krause and Joseph Wheeler filed a lawsuit in Livingston County state circuit court against Mr. Turner for allegedly improperly cutting the dead trees, brush and scrub on Mr. Wheeler's property and the Krauses' property. This civil case was formally commenced by Defendant Dollar in Mr. Wheeler's own name and without reference to his guardian even though the initial guardianship appointment had been formalized earlier on May 11, 2023.

44. Further, Defendants Myers & Myers, PLLC, Richard and Tonya Krause, Dollar, and Mattern continued to maintain this lawsuit in Joseph Wheeler's individual capacity for more than one year after Ms. Ketchmark was formally appointed on August 9, 2023, as his guardian for his "legal issues and financial affairs" without any notice to or involvement by her. They also failed to inform the guardian ad litem. These Defendants knew of the guardianship proceedings. These Defendants intentionally sought to hide Mr. Wheeler's recent psychiatric hospitalization and legal incapacity status from Mr. Turner and his legal counsel and never disclosed this information to them.

45. The filing and ongoing maintenance of this State of Michigan civil lawsuit in Joseph Wheeler's individual capacity was part of a calculated effort by the Defendants to intentionally & nefariously conceal his recent psychiatric hospitalization and legal incapacity to wrongfully obtain benefits in their own name in furtherance of their efforts to obstruct the administration of justice attendant to the critically important consent and legal incapacity issues of Joseph Wheeler to the detriment of Plaintiff Turner in the pending state civil action. Joseph Wheeler clearly was having a severe and pronounced mental

9

health crisis that began in December 2022 after his voluntary cessation of his lifelong prescription medicine regime. Mr. Wheeler's severe and pronounced mental health crisis was ongoing at all relevant times concerning the critical events attendant to the state civil action. All of these events were intentionally hidden by Defendants from the court, Mr. Turner and his legal counsel.

46. As Judy Wheeler had personally initiated the guardianship proceedings on May 4, 2023, in the Livingston County state probate court for Joseph Wheeler, Defendant Judy Wheeler clearly had direct & personal knowledge of the initial guardian appointment and subsequent final formal guardianship appointment (Ms. Ketchmark) for Joseph Wheeler when she was added as a real party in interest in the civil action in mid-June 2023.

47. Defendants Richard and Tonya Krause also knew of the guardianship appointment for Mr. Joseph Wheeler when the state civil lawsuit was filed because of his public & extraordinary involuntary detainment by a police & ambulance crew on April 18, 2023, subsequent multi-week absence from the neighborhood and prior communications with both subdivision neighbors & Judy Wheeler. In addition, Mr. Wheeler also had listed Defendants Mr. & Mrs. Krause as supporting witnesses in his responsive pleadings while initially contesting the guardianship appointment - which is clearly indicative of relevant prior communications. Defendants Richard and Tonya Krause (whose property was not damaged according to their own engineering survey) also intentionally took advantage of Mr. Wheeler's diminished mental status & legal incapacity by causing him to file suit against Mr. Turner to improperly obtain relief for their own account without the involvement of his court appointed guardian.

48. Judy Wheeler testified that she was both unaware of this civil lawsuit prior to its filing and also surprised that Joseph Wheeler had commenced a lawsuit against Mr. Turner, especially given his ongoing and advanced mental health issues in the weeks immediately prior to the commencement of the lawsuit.

49. Defendant Dollar also knew of the guardianship appointment for Joseph Wheeler when she commenced the civil action and also knew of the guardianship appointment for Joseph Wheeler at the May 26, 2023, Show Cause hearing due to her conduct there and afterwards when she added Defendant Judy Wheeler, as Trustee of the Judy R. Wheeler trust, as an additional plaintiff in an amended complaint in early June 2023 in response to Plaintiff Turner's claim that the trust owning the abode at 1290 Pond Bluff Way, Brighton, Michigan 48114 was the proper party for any such lawsuit. The Defendants also continued to maintain their lawsuit in Joseph Wheeler's individual capacity and without reference to his permanently appointed guardian (Ms. Ketchmark who had been appointed his guardian for his "legal issues and financial affairs" on August 9, 2023) against Mr. Turner. Plaintiff Turner and his legal counsel only learned of Mr. Wheeler's psychiatric hospitalization and guardianship proceedings in June 2024 thru their diligent discovery efforts.

50. As Defendants Dollar and Mattern are associate attorneys at Defendant Myers & Myers, PLLC, they were under the legal supervision of equity partners of the law firm.

51. According to Judy Wheeler's testimony, who is trustee of the property where Joseph Wheeler resides and where the alleged unlawful cutting of a small amount of dead trees, brush & scrub occurred with his consent, she had no prior knowledge of the lawsuit prior to it being filed. She also testified that she had not visited Michigan for several years as she lived in Georgia and has no personal knowledge of any of the relevant events or actual facts in the state civil case. Judy Wheeler further testified that she was not aware of any of the specific civil case pleadings. In addition, Judy Wheeler testified that she had not seen or been provided copies of any of the relevant discovery requests filed by Plaintiff Turner or his legal counsel in this civil action. Based upon Judy Wheeler's testimony, it would appear that Defendants Dollar and Mattern filed pleadings and initial discovery disclosures and direct discovery responses without the involvement of Judy Wheeler or the guardian for Joseph Wheeler – all of which violates applicable rules of civil procedure and Michigan Rules of Professional Conduct for attorneys.

52. Later, on August 2, 2023, Defendant Tonya Krause, while represented by her attorney Defendant Dollar in the state civil case, filed a false police report accusing Mr. Turner of cutting down trees on her property. The filing of a false police report in Michigan is a criminal act pursuant to the Michigan Penal Code. See Mich. Statutes § 750.411a.

53. Defendant Tonya Krause knew that her formal police report accusation was false because she and her husband, Defendant Richard Krause, had formally commissioned a yard boundary survey which was completed on May 18, 2023, which delineated the boundary of their property and clearly demonstrated that no trees had been cut on their property and that there was no damage to their property. Defendant Tonya Krause later testified that her police complaint against Plaintiff Turner was not true. The filing of a false police report by Defendant Tonya Krause was done to improperly harass Plaintiff Turner as part of an ongoing effort to gain procedural & substantive advantage and other legal benefits (including personal monetary gain) in the pending state civil case. In addition, as the jurisdiction requirement for maintenance of a state civil circuit court case is damages in excess of $ 25,000.00, Defendants Richard and Tonya Krause also intentionally filed and maintained this state civil circuit court case without satisfying the state jurisdictional requirements as part of an ongoing fraudulent activity in interfere with the administration of justice. Finally, Defendant Dollar, while representing the Defendants, has not sought to identify & separately document the alleged damages of each party as required in civil actions as part of an improper attempt to blur and inappropriately hide the Krauses' failure to satisfy the required jurisdictional amount requirements.

54. During the ongoing pendency of the Livingston County civil case, Defendants repeatedly and intentionally failed over a period in excess of one year to inform the Plaintiff Turner, the state civil court and Plaintiff Turner's counsel via their filed pleadings and discovery responses concerning the known psychiatric hospitalization of Mr. Wheeler and Ms. Ketchmark's guardianship appointment for Joseph Wheeler's "legal issues and financial

affairs". These pleadings, including all required professional attestations accompanying their signatures contained therein, included the initial complaint, the amended complaint, answers to Mr. Turner's initial and amended counterclaims and various motions – all of which are reflected in the court docket. Additionally, pleadings and discovery responses were filed by Defendants without the participation of Defendant Judy Wheeler (as trustee of the Helen R. Wheeler trust) as she testified that she was unaware of these materials. Further, pleadings and discovery responses were filed on behalf of Jospeh Wheeler by Defendants Dollar and Mattern without the involvement of his lawfully appointed interim guardian (which was appointed prior to the commencement of this state civil action) and final appointment of Ms. Ketchmark on August 9, 2023, as the lawful guardian of Joseph Wheeler. The legal appointment of a guardian for Joseph Wheeler prior to the commencement of this civil action and its ongoing maintenance afterwards after Ms. Ketchmark had been formally appointed as his guardian for his "legal issues and financial affairs" was intentionally and nefariously hidden by Defendants as part of a planned scheme to obtain relief in wrongful parties' names and also improperly gain procedural and substantive advantage in the civil case for unlawful personal monetary gain and other legal benefits.

55. On October 4, 2023, Defendant Dollar, acting as Defendants' legal counsel during a Livingston County state civil court ordered mediation session, attempted to settle the civil case as part of an effort to obtain relief in a wrongful party's name without the knowledge or involvement of Ms. Ketchmark, the probate court appointed guardian for Joseph Wheeler notwithstanding that she had been specifically appointed for Mr. Wheeler's "legal issues and financial affairs" on August 9, 2023.

56. In August 2024, Ms. Ketchmark finally learned of the pending state civil case initiated by Defendants Joseph Wheeler, Judy Wheeler and Richard & Tonya Krause when she was subpoenaed as non-party for her deposition by Mr. Turner's counsel - more than 15+ months after the state civil case was commenced by Defendants and more than a year after her appointment as the legal guardian for Joseph Wheeler's "legal issues and financial affairs".

57. During the pendency of the Livingston County civil court proceedings, the Defendants utilized the mail services of the United States Postal Service and electronic wire services (as evidenced by the attendant certificates of service) to submit more than a dozen regular court filings set forth in the court register over a period exceeding one year which repeatedly concealed & intentionally mischaracterized the legal incapacity of Joseph Wheeler and without properly disclosing the existence of the lawfully appointed legal guardian – Ms. Ketchmark who was specifically directed to manage his "legal issues and financial affairs" beginning on August 9, 2023. Each legal filing (including but not limited to the initial civil complaint, amended complaint, answers to Mr. Turner's counterclaims, and other motions & pleadings) by the Defendants using the U.S. Postal services and related electronic wire systems was part of an ongoing collective fraudulent effort to improperly gain monetary compensation and other procedural & substantive legal advantages in the state civil action to the detriment of Plaintiff Turner.

58. As the direct result of this most unusual and bizarre sequence of improper events, Defendants Dollar, Mattern and Myers & Myers, PLLC have violated various provisions of the Michigan Rules of Professional Conduct for licensed attorneys, including, but not limited to, Rule 3.3 (a)(1) [Candor Toward the Tribunal], Rule 3.4 [Fairness of Opposing Party and Counsel], and Rule 8.4(b) & (e) {Misconduct – both as to "fraud" and knowingly assisting a judge to violate applicable rules]. In addition, these Defendants have violated various applicable conflicts of interest provisions of the Michigan Rules of Professional Conduct.

59. At a January 10, 2025, status conference for the pending state civil case, Defendant Dollar raised the issue of adding Ms. Ketchmark as a party to the ongoing state civil case.

60. Plaintiff Turner responded to Defendant Dollar in an email dated January 28, 2025, and stated, amongst other points, that this was improper, contrary to the Michigan Rules of Professional Conduct for attorneys and an abuse of process by Defendant Judy Wheeler and possibly other involved individuals.

## **COUNT ONE – ABUSE OF PROCESS**

61. Defendants' conduct set forth in the above paragraphs 1 through 60 (which are incorporated by reference herein) clearly constitutes an abuse of process. Defendants have sought to improperly harass Plaintiff Turner, extort Plaintiff Turner and otherwise oppress him by initiating and maintaining the state civil case to improperly obtain relief in a wrongful party's name and their related financial accounts. Defendants also filed suit without Judy Wheeler (the real party in interest) & maintained the state action knowing that Mr. Wheeler was mentally unstable and legally incapacitated to the surprise of Judy Wheeler, especially given the consent issue. Additionally, they sought to gain such relief and additional procedural & substantive advantages and attendant legal leverage for both improper monetary gain for their own accounts & other inappropriate legal benefits in their own names in the state litigation to the detriment of Plaintiff Turner by their intentional, fraudulent and calculated concealment of the existing severe mental health and related existing legal incapacity issues of Joseph Wheeler in his legal matters as an individual legal party without the required timely disclosure of & involvement by his lawfully probate court-appointed guardians.

62. This general & overall conduct by Defendants, including both the filing & maintenance of the civil action (including fraudulent discovery responses) without the timely & full participation & involvement of both Joseph Wheeler's court appointed guardians and Judy Wheeler constitutes a calculated fraud upon Plaintiff Turner, the state court and Plaintiff Turner's counsel and also unduly prolonged & inappropriately continued the civil case – all in contravention of and a perversion of generally applicable state legal rules and also specifically involving and pleading the proper & real party in interest when a legally

13

incapacitated party is involved in a civil proceeding. This conduct also contravenes applicable State of Michigan Rules of Professional Responsibility concerning the conduct of licensed attorneys and was an obstruction of justice. This fraudulent scheme was improper in the regular course of this case and in civil proceedings generally in the State of Michigan.

63. In addition, Defendants Richard and Tonya Krause improperly caused Joseph Wheeler to file & maintain the state civil lawsuit while legally incapacitated. These Defendants also improperly commenced and have maintained the state civil case without satisfying applicable State of Michigan civil circuit court jurisdictional requirements of damages in excess of $25,000.00

64. In addition, Defendant Tonya Krause knowingly and intentionally filed a false police report against Plaintiff Turner as part of an effort to obtain relief in a wrongful party's name.

65. Defendant Turner now seeks appropriate compensatory damages, direct & indirect costs, lost wages, pain & suffering, attorney fees, interest, treble damages and punitive damages and any other awards that this court deems appropriate, all of which collectively exceed $75,000.00

## COUNT TWO - FEDERAL MAIL FRAUD

66. Plaintiff Turner re-alleges and re-incorporates above paragraphs 1 through 65 as though they were fully stated herein.

67. Defendants Myers & Myers, PLLC, Judy Wheeler, Joseph Wheeler, Richard and Tonya Krause, Dollar & Mattern have engaged in federal mail fraud in violation of 18 U.S.C. § 1341 as they devised or intended to devise a scheme to defraud (or to perform various fraudulent acts) and actually used the U.S. mail services for the purpose of executing or attempting to execute, the scheme (or specified fraudulent acts) though the mailing of numerous formal state civil pleadings and related submissions using U.S. Postal services – both with the state court, Plaintiff Turner and his legal counsel.

68. Said Defendants engaged in and participated in this fraudulent pattern over multiple months (exceeding one year) due to the improper failure to disclose the lawful appointment of guardians for Mr. Joseph Wheeler and other matters listed above.

69. Said Defendants' actions have directly and indirectly caused material compensable injury to Plaintiff Turner.

70. These acts of mail fraud by Defendants were part of an ongoing and lengthy fraudulent enterprise spanning more than one year to improperly harass Plaintiff Turner and

14

    inappropriately gain additional procedural & substantive advantages and attendant legal leverage for both improper monetary gain for their own accounts & other improper legal benefits in the state litigation to the material detriment of Plaintiff Turner.

71. Plaintiff Turner now seeks appropriate compensatory damages, direct & indirect costs, lost wages, pain & suffering, attorney fees, interest, treble damages and punitive damages and any other awards that this court deems appropriate, all of which collectively exceed $75,000.00

## COUNT THREE -  INTERSTATE WIRE FRAUD

72. Plaintiff Turner re-alleges and re-incorporates above paragraphs 1 through 71 as though they were fully stated herein.

73. Defendants Myers & Myers, PLLC, Judy Wheeler, Joseph Wheeler, Richard and Tonya Krause, Dollar & Mattern through their conduct described above, have engaged in interstate wire fraud through their repeated materially false legal filings and related legal services invoicing to Defendant Judy Wheeler in Georgia in the related state civil case.

74. Said Defendants: 1) voluntarily and intentionally devised this fraudulent scheme to defraud Plaintiff Turner out of monies; 2) did so & acted with the intent to defraud; 3) did so when it was reasonably foreseeable that interstate wire communications would be used as Defendant Judy Wheeler is a resident of the State of Georgia; and 4) interstate wire communications were, in fact, used.

75. These acts of wire fraud by said Defendants were part of an ongoing fraudulent enterprise to improperly harass Plaintiff Turner, extort him and inappropriately gain additional procedural & substantive advantages and attendant legal leverage for both improper material monetary gain & other improper legal benefits in the state litigation - all to the material detriment of Plaintiff Turner.

76. Plaintiff Turner now seeks appropriate compensatory damages, direct & indirect costs, lost wages, pain & suffering, attorney fees, interest, treble damages and punitive damages and any other awards that this court deems appropriate, all of which collectively exceed $75,000.00

        Respectfully submitted,

**Plaintiff Eric P. Turner**

By: /s/ *Eric P. Turner*
Eric P. Turner (MI 65458)
Eric P. Turner, PLC
7537 East Lake Drive
Brighton, MI 48114
eric@ettaxlaw.com
(248) 345-5973