**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ERIC PETER TURNER,

Plaintiff,

Case No. 25-11040
Hon. Jonathan J.C. Grey

v.

MYERS & MYERS, PLLC et al.,

Defendants.
______________________________/

**OMNIBUS OPINION AND ORDER**

## I. INTRODUCTION

On May 27, 2025, pro se Plaintiff Eric Peter Turner filed an amended complaint against Defendants Myers & Myers, PLLC ("Myers & Myers"), Senara R. Dollar, Kristyn R. Mattern, Judy Wheeler, both in her individual capacity and as the trustee of the Helen R. Wheeler trust, Joseph Wheeler, Denise R. Ketchmark, Richard Krause, and Tonya Krause (collectively, "defendants").[1] (ECF No. 14.) This lawsuit arises

[1] Turner filed the initial complaint on April 11, 2025 (ECF No. 1), and defendants moved to dismiss it on May 5, 2025 (ECF No. 3). The Court denied defendants' first motion to dismiss as moot without prejudice (ECF No. 18) after Turner filed his first amended complaint under Federal Rule of Civil Procedure 15(a)(1)(B) (ECF No. 14)—the operative complaint of this action.

from events that occurred in a state court property dispute between the parties. Turner's complaint before this Court alleges a federal RICO claim as well as state law abuse of process and fraud claims. (*Id.* at PageID.655–661.)

On June 10, 2025, defendants moved to dismiss Turner's first amended complaint.[2] (ECF No. 17.) Rather than respond to defendants' motion to dismiss, Turner filed a second amended complaint (ECF No. 22) without the Court's leave.[3] Defendants then moved to strike Turner's second amended complaint (ECF No. 23), and while that motion was pending, Turner sought leave to file a *third* amended complaint (ECF No. 32).[4] Finally, on September 17, 2025, defendants moved for sanctions

---

[2] All defendants, except for Judy Wheeler in her individual capacity, moved to dismiss the first amended complaint. (ECF No. 17.) On February 2, 2026, Judy Wheeler, in her individual capacity, separately moved to dismiss the first amended complaint. (ECF No. 37.)

[3] On July 11, 2025, the Court, via a text-only order, explicitly ordered Turner to file a response to the pending motion to dismiss and warned him that any documents filed as a response to the motion to dismiss (ECF No. 17), which include pleadings other than his response brief, will be stricken as improperly filed. Undeterred, Turner filed a second amended complaint in contravention of the Court's order and without seeking leave. (*See* ECF No. 22.)

[4] While Turner titles the document at ECF No. 22 "first amended complaint," it is indeed his second. Thus, the Court refers to ECF No. 22 as the second amended complaint. Similarly, despite Turner's representations, ECF No. 32 is a motion for leave to file a *third* amended complaint, and the Court refers to it as such.

against Turner pursuant to Federal Rules of Civil Procedure 11(b)(1)–(3).[5] (ECF No. 29.)

The Court finds that the parties have adequately briefed the motions and therefore considers them without oral argument. E.D. Mich. LR 7.1(f). For the following reasons, the Court **DENIES IN PART AND GRANTS IN PART** defendants' motion to strike the second amended complaint (ECF No. 23), **DENIES** Turner's request to file a second amended complaint (*see* ECF No. 24), **DENIES** Turner's motion for leave to file a third amended complaint (ECF No. 32), **GRANTS** defendants' motion to dismiss the first amended complaint (ECF No. 17), **DENIES AS MOOT** Judy Wheeler's (in her individual capacity) motion to dismiss the first amended complaint (ECF No. 37), and **GRANTS IN PART AND DENIES IN PART** defendants' motion for Rule 11 sanctions (ECF No. 29).

## II. BACKGROUND

To understand the events preceding this lawsuit, the Court outlines the relevant procedural history and facts of the pending state court

[5] ECF No. 27 was improperly docketed as a motion for sanctions. The Court interprets it as Turner's premature reply to defendants' motion for sanctions. Therefore, ECF No. 27 is **DENIED AS MOOT**.

action. On May 12, 2023, Joseph Wheeler, Richard Krause, and Tanya Krause filed a lawsuit against Turner in Livingston County Circuit Court (the "Livingston County Case"), by and through their attorneys, Myers & Myers and Dollar, in which they asserted claims for trespass and conversion. (ECF No. 17, PageID.707; ECF No. 14, PageID.641.) On June 16, 2023, Judy Wheeler—Trustee of the Helen R. Wheeler Trust, which owns the real property wherein Joseph Wheeler resides and which is one of the properties involved in the Livingston County Case dispute—joined the lawsuit as a plaintiff. (ECF No. 3-5.) Joseph Wheeler, Richard Krause, Tanya Krause, and Judy Wheeler as trustee (collectively, the "Livingston County Plaintiffs") sought to hold Turner liable for harm he allegedly caused to their respective properties. (*Id.*)

On April 11, 2025, Turner filed the instant action alleging that the Livingston County Plaintiffs perpetrated a scheme, which resulted in unlawful conduct in the pending Livingston County Case. (ECF Nos. 1, 14.)

**A. Real party in interest**

First, Turner raises several issues related to Joseph Wheeler's competency. On April 18, 2023, just over three weeks before the

commencement of the Livingston County Case, Joseph Wheeler was involuntarily committed to a psychiatric facility and diagnosed with a mental illness. (ECF No. 36-1; ECF No. 36-2.) Allegedly, he was released in early May 2023, and on May 11, 2023, a day before the commencement of the Livingston County Case, the Livingston County Probate Court appointed James A. Shay as his guardian ad litem. (ECF No. 36-3.) Then, on August 8, 2023, pursuant to a consent order, Ketchmark was appointed as Joseph Wheeler's limited guardian with the following powers: "medical care (except mental health commitment), legal issues, and financial matters (except as to the individual's earned income)." (ECF No. 36-8.)

Turner and his state counsel had no knowledge of these events at the time and only learned of the guardianship proceedings in June 2024 through their own efforts outside of the discovery process. (ECF No. 14, PageID.649.) Turner therefore contends that the Livingston County Plaintiffs and Dollar, an attorney at Myers & Myers and their counsel, commenced the Livingston County Case in Joseph Wheeler's name, without reference to or the involvement of his appointed guardian, Ketchmark. He further alleges that defendants knowingly continued to

maintain the state court lawsuit in Joseph Wheeler's individual capacity for more than a year after Ketchmark's appointment, without Ketchmark's knowledge, and intentionally concealed Joseph Wheeler's mental illness and legal incapacity status. (*Id.* at PageID.647.)

Turner also alleges other misconduct in the Livingston County Case as part of defendants' purported scheme "to gain procedural and substantive legal benefit in the case" as well as unlawful monetary gain. (*Id.* at PageID.650, PageID.652.) For instance, Turner contends that Dollar and Mattern—another attorney at Myers & Myers who participated in the Livingston County Case when Dollar was on leave—filed pleadings, initial discovery disclosures, and discovery responses without the knowledge or involvement of Judy Wheeler or Joseph Wheeler's guardian, Ketchmark, in violation of Michigan Rules of Civil Procedure and Michigan Rules of Professional Conduct for attorneys. (*Id.* at PageID.650.) Thus, he maintains that the wrong party in interest was involved in the initiation of the case, during mediation, and throughout the litigation. He further asserts that (1) more than a dozen court filings repeatedly concealed Joseph Wheeler's legal incapacity status and existence of his legal guardian, and (2) defendants used the U.S. Postal

Service and related electronic wire systems to submit more than a dozen of these fraudulent court filings. (*Id.* at PageID.652.)

Turner raised the issue of the proper party in interest in the Livingston County Case. In his motion for partial summary disposition before the state court, Turner argued that Joseph Wheeler's claims against Turner must be dismissed based on lack of capacity and lack of standing (ECF No. 3-11, PageID.260–264), but the judge found that "Mr. Wheeler at that time [the case was initiated] was not deemed to be incompetent." (ECF No. 3-13, PageID.465, 513.) The Livingston County judge denied Turner's motion for partial summary disposition and granted summary disposition to the Livingston County Plaintiffs on all claims. (ECF No. 3-10.) Defendants maintain that Turner never appealed the decision, nor did he file a separate motion for substitution.[6] (ECF No. 17, PageID.710.) As of the filing of defendants' motion to dismiss the first amended complaint in this action, a trial on damages in the Livingston County Case was yet to be scheduled. (*Id.*)

[6] Defendants further contend that Turner continued to insist that Ketchmark must substitute as a party for Wheeler, while ignoring their offers to stipulate to that request. Finally, on April 15, 2025, the Livingston County Plaintiffs moved to amend the state case caption to put the issue to rest, "[e]ven though they did not believe that they had a duty to do so." (ECF No. 17, PageID.710.)

### B. Other false or improperly filed documents

In addition to the issue of the proper party in interest, Turner alleges that on August 2, 2023, Tonya Krause, through Dollar's legal counsel, knowingly filed a false police report accusing Turner of cutting down trees on her property to harass and coerce him into settlement. (ECF No. 14, PageID.650.) He also maintains that Richard and Tonya Krause intentionally filed and maintained the Livingston County Case without satisfying the state jurisdictional requirements as part of the fraudulent scheme. (*Id.* at PageID.651.) Moreover, the Livingston County Plaintiffs allegedly filed improper motions for a temporary restraining order and personal protection order against Turner. (*Id.* at PageID.642.)

While the Court refrains from reiterating every allegation in Turner's first amended complaint, the above-alleged misconduct serves as the basis of Turner's state law abuse of process and fraud claims as well as the federal RICO claim.

## III. LEGAL STANDARD

### A. Motion to Strike

Under Federal Rule of Civil Procedure 12(f), the Court, acting sua sponte or on a party's motion, "may strike from a pleading . . . any

redundant, immaterial, impertinent, or scandalous matter." "An allegation is 'impertinent' or 'immaterial' when it is not relevant to the issues involved in the action." *State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy, LLC*, 107 F. Supp. 3d 772, 801 (E.D. Mich. 2015) (citation omitted). "'Scandalous' generally refers to any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that 'detracts from the dignity of the court.'" *Id.* (citation omitted).

The Court has wide discretion to strike material from a pleading if it is redundant, immaterial, impertinent, or scandalous. *Id.* However, the Sixth Circuit has recognized that "the action of striking a pleading should be sparingly used by the courts. It is a drastic remedy to be resorted to only for the purposes of justice." *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953) (citations omitted); *see also Operating Eng'rs Loc. 324 Health Care Plan v. G & W Const. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015).

**B. Motion to Amend**

Federal Rule of Civil Procedure 15(a) allows a party to amend its pleading once as a matter of course, and following the initial amendment,

"only with the opposing party's written consent or the court's leave." "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Court should deny leave to amend "if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile." *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995) (citations omitted). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (citation omitted).

**C. Motion to Dismiss**

Under Federal Rule of Civil Procedure 12(b)(6), a pleading fails to state a claim if its allegations do not support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the court accepts the complaint's factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The plaintiff need not provide "detailed factual allegations" but must provide "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted) ("[A] formulaic

recitation of the elements of a cause of action will not do.”).

Although the complaint “must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face,” the court need not accept legal conclusions as true. *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted). The complaint is facially plausible if it “pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.” *Id.*; *see also 16630 Southfield Ltd. P’ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (“The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant’s conduct.”).

## IV. ANALYSIS

### A. Defendants’ Motion to Strike Second Amended Complaint (ECF No. 23)

Defendants argue that the Court should strike Turner’s second amended complaint[7] (ECF No. 22) because Turner: (1) did not request

[7] The motion to strike is fully briefed. (ECF No. 23–25.) However, Turner also filed what amounts to a sur-reply. (ECF No. 26.) Sur-replies are not permitted unless requested by the Court. *See, e.g.*, E.D. Mich. Local Rules 5.1 and 7.1. The Court exercises discretionary leniency and considers the sur-reply but notes that this is not the first time Turner, a licensed attorney, failed to comply with the Local Rules.

defendants' consent to file a second amended pleading; and (2) did not seek leave from this Court to file a second amended pleading. (ECF No. 23, PageID.1030–1031.) Defendants further contend that the Court should strike Turner's second amended complaint under Federal Rule of Civil Procedure 12(f) because it is redundant and scandalous. (*Id.* at 1031–1034.)

Cause to strike Turner's second amended complaint exists. Federal Rule of Civil Procedure 15(a) is clear: a party is entitled to amend its pleading once as a matter of course, but "[i]n all other cases," it may do so "only with the opposing party's written consent or the court's leave." Turner already amended his pleading once as a matter of course (*see* ECF No. 14), and while titled "First Amended Complaint" (ECF No. 22), this is in fact Turner's *second* amended pleading. Yet, he did not obtain defendants' written consent or the Court's leave as required under the Federal Rules of Civil Procedure.[8]

In his response to defendants' motion to strike, Turner states that "[t]o the extent that [he] is required to seek court permission to file his

---

[8] Turner argues that he "reasonably [and] appropriately construed this [C]ourt's July 11, 2025[] order as granting him permission to file his [second] amended complaint without a formal separate motion." (ECF No. 24-1, PageID.1102.) The Court is not convinced,its text-only order is clear and unambiguous.

[second] [a]mended [c]omplaint, then [he] requests that this court interpret this response as a formal request" to do so. (ECF No. 24, PageID.1087.) However, courts in the Sixth Circuit have consistently rejected such perfunctory requests. Making an amendment request as "an aside" in response to defendants' motion "is not the proper procedure for requesting leave to amend." *Lee v. Cincinnati Cap. Corp.*, No. 19-12133, 2021 WL 598543, at *4 (E.D. Mich. Feb. 16, 2021); *Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 214 F.3d 776, 784 (6th Cir. 2000) ("What plaintiffs may have stated, almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss is also not a motion to amend."); *see also All. for Child., Inc. v. City of Detroit Pub. Schs.*, 475 F. Supp. 2d 655, 669 (E.D. Mich. 2007) (The Sixth Circuit's "disfavor of such a bare request in lieu of a properly filed motion for leave to amend was made clear" in *Begala*.).

Still, although cause to strike exists, the Court finds it more efficient to consider Turner's request on the merits given the pending motion for leave to file a *third* amended complaint, which is substantially similar to the second amended complaint. (ECF No. 32.) **The Court, however, strikes and strongly condemns Turner's cruel,**

**abhorrent language that dehumanizes individuals with mental health conditions**—namely his statements that "[t]oday's Joseph Wheeler simply is a pharmaceutically created humanoid-like organism with a minimal connection to reality" and that he was "rendered . . . into a humanoid-like vegetable." (ECF No. 22, PageID.955–956.) **The Court strongly cautions Turner against invoking such language in the future.**

### B. Second Motion to Amend

#### *1. Amendment would be futile.*

Turner claims that his second amended complaint "set[s] forth great detail concerning the additional factual [and] legal bases behind the additional interstate RICO claims and related financial [and] tax issues concerning Defendants' overall conduct during the underlying state civil action." (ECF No. 24, PageID.1086.) The Court **DENIES** Turner's request to file a second amended complaint (*see id.* at PageID.1087) because the amendment would be futile where Turner's RICO claim could not survive a Rule 12(b)(6) motion to dismiss.[9] *Rose*,

[9] The Court focuses on the federal RICO claim because if it fails, the Court declines to extend jurisdiction over the supplemental state law claims. *See infra* Section IV.C.

203 F.3d at 420 (citation omitted) ("A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss.").

To state a RICO claim, Turner "must plead the following elements: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006) (quoting *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985)). Because the Court finds that the second amended complaint lacks facts establishing a "pattern" of racketeering activity, it need not address the other RICO elements.

"A pattern of racketeering activity requires, at minimum, two acts of racketeering activity within ten years of each other." *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 409 (6th Cir. 2012) (citing 18 U.S.C. § 1961(5)). "[T]o show a 'pattern' of racketeering activity, a plaintiff must show 'that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity.'" *Id.* (emphasis in original) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237–239 (1989)). This is known as the "relationship plus continuity test." *Id.* (internal quotation marks and citation omitted). Because Turner fails to allege sufficient facts to establish continuity, the Court

assumes, without deciding, that Turner adequately pleaded two or more predicate acts and that the alleged racketeering predicates are related.

Continuity "'is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition.'" *Moon*, 465 F.3d at 724 (quoting *H.J. Inc.*, 492 U.S. at 241). "A closed period of continuity may be demonstrated 'by proving a series of related predicates extending over a substantial period of time.'" *Id.* (quoting *H.J. Inc.*, 492 U.S. at 242). "Although there are no rigid rules regarding what amounts to 'a substantial period of time,' racketeering activity lasting only 'a few weeks or months and threatening no future criminal conduct' is insufficient." *Id.* at 725 (quoting *H.J. Inc.*, 492 U.S. at 242). Open-ended continuity "turns on whether the plaintiff has pleaded facts suggesting the threat of continued racketeering activities projecting into the future," *id.* at 726,—"for example, because the predicates themselves involve a distinct threat of such activity; because they are part of the regular way of doing business for an ongoing entity . . . ; or because they are a regular means of conducting or participating in an ongoing RICO enterprise[.]" *H.J. Inc.*, 492 U.S. at 230.

The Court first determines whether a closed period of continuity exists. The second amended complaint alleges that defendants' unlawful conduct extended over two years. (ECF No. 14, PageID.660.) Defendants argue that thirteen months[10] does not constitute a "substantial period of time." (ECF No. 17, PageID.723–724.) Turner posits, however, that there is a substantial risk of future racketeering activity as defendants "have shown no remorse for their conduct and have generally alleged that their activities were permissible." (ECF No. 26, PageID.1153.) The Court finds that Turner does not plead sufficient facts in his amended complaint to establish close-ended continuity.

*Moon v. Harrison Piping Supply* is illustrative. In *Moon*, the Sixth Circuit found that "even if the racketeering activity lasted for two-and-a-half years," closed-ended continuity did not exist where all the predicate acts served a single objective of depriving the plaintiff of his workers' compensation benefits. 465 F.3d at 725–726. The plaintiff failed to allege any facts suggesting that the scheme would continue beyond the

[10] Defendants measure this period from the initiation of the state court action (May 2023) to when Turner discovered that Joseph Wheeler has a guardian (June 2024). (ECF No. 17, PageID.723–724.) In his second amended complaint, Turner alleges that defendants' activities were continuous through at least June 26, 2025. Accepting Turner's measurement of time, however, does not change the Court's analysis, as discussed below.

defendants accomplishing their goal of terminating the plaintiff's benefits. *Id.*; *see also Vemco, Inc. v. Camardella*, 23 F.3d 129, 134–135 (6th Cir. 1994) (finding a single, 17-month fraudulent scheme to misrepresent a price in a construction contract and later extort a higher price insufficient to constitute closed-ended or open-ended continuity); *Salamey v. Salami*, No. 25-1120, 2025 WL 3488309, at *2 (6th Cir. Dec. 4, 2025) (finding that a single scheme to misuse the plaintiffs' funds from the credit union account against a single victim does not constitute a pattern).

So too here. Turner contends that the Livingston County Case was part of defendants' calculated effort to:

> intentionally & nefariously conceal Mr. Wheeler's recent psychiatric hospitalization, guardianship appointments, ongoing severe mental illnesses and formal determination of legal incapacity to wrongfully obtain benefits in their own name & own accounts in furtherance of their efforts to obstruct the administration of justice attendant to the critically important consent and legal incapacity determinations concerning Joseph Wheeler to the detriment of Plaintiff Turneer in a pending state civil action . . . All of these events were intentionally hidden by said Defendants from the Circuit Court, Mr. Turner and his legal counsel to improperly obtain legal procedural & substantive benefits and attendant financial assets for their own accounts in the pending state civil case.

(ECF No. 22, PageID.958.) In other words, all predicate acts served a

single objective: maintaining and profiting from a civil lawsuit in Joseph Wheeler's individual capacity against Turner. The second amended complaint fails to allege facts that the scheme extends beyond this objective. Once the state civil case closes, the alleged scheme ends.

Next, the Court evaluates whether open-ended continuity exists and finds that it does not. The Sixth Circuit has repeatedly held that "an inherently terminable scheme"—i.e., "a pattern of racketeering activity with a built-in ending point"—is insufficient to find open-ended continuity. *See Heinrich*, 668 F.3d at 410–411 (collecting cases).

The fact that defendants allegedly engaged in multiple illegal acts as part of this scheme does not save Turner's RICO claim. The Sixth Circuit presented a hypothetical in *Blue Cross & Blue Shield of Michigan v. Kamin*, 876 F.2d 543, 545 (6th Cir. 1989) to clarify what constitutes a "pattern" using a predicate offense of mail fraud as an example.

> [I]f one devises a scheme to file a false insurance claim relating to an allegedly stolen automobile, and causes a letter to be mailed to the police and to the insurance company, each letter may be the basis for a separate count of mail fraud in a criminal prosecution. There is clearly only one scheme to defraud, however, and these facts should not support a civil RICO claim. However, if the same person owns ten automobiles and fraudulently tries on ten different occasions to collect from the insurance company on each car, there would be ten schemes, not one, notwithstanding that the

> insurance company was the victim in each case and the *modus operandi* of the wrongdoer was the same in each case. Such facts would support a civil RICO claim.

*Id.* at 545. Turner's allegations are akin to the former scenario: all the alleged predicate acts of mail fraud, wire fraud, and others may serve as bases for separate counts in a criminal prosecution, but only one scheme to maintain a fraudulent lawsuit against Turner exists—and with a built-in ending point. These facts do not support a civil RICO claim in this circuit.

To the extent Turner argues that Myers & Myers adopts an unlawful business model and deploys criminal activities in "their regular course of business" (ECF No. 26, PageID.1153), he has not pleaded sufficient facts to support such a conclusory allegation. In *Moon*, for example, the plaintiff pleaded that "one or more members of the enterprise engaged in similar acts to defraud other persons of their workers' compensation benefits," but the Sixth Circuit found that those allegations did not "reasonably support the notion that the alleged fraud of which [the plaintiff] complains is [d]efendants' *regular* way of doing business." 465 F.3d at 727 (emphasis in original).

Turner alleges even less than the plaintiff in *Moon* did—he points

to no other individuals who have been targeted as he allegedly has been by Dollar, Mattern, or anyone else at Myers & Myers. Turner asks the Court to assume that the alleged illegal conduct of which he complains is Myers & Myers' regular way of doing business based solely on his own experience and the fact that Dollar and Mattern are still employed there. Drawing all reasonable inferences in Turner's favor "may lead [the Court]," *at most*, "to conclude that several instances of similar conduct have occurred, but they do not support a systematic threat of ongoing fraud." *Id.* at 727–728. "In short, the leap from [Turner]'s allegations to the conclusion" that defendants customarily bring fraudulent lawsuits to coerce, extort, and/or profit off individuals "is too great, even drawing all reasonable inferences" in favor of Turner. *Id.* at 728.

Turner further argues that the alleged criminal enterprise is ongoing because defendants: (1) continue to mispresent the proper parties in this federal action, and (2) will continue to submit fraudulent tax filings going forward.[11] However, defendants' alleged attempts to

[11] Specifically, Turner alleges that there is no valid or lawful business purpose for the fraudulent conduct in the state civil action against Turner, and thus, Myers & Myers improperly claimed various business expenses in a potentially criminally tax fraudulent manner with respect to the involved attorneys. (ECF No. 22, PageID.974–

continue to conceal and benefit from the ill-gotten fruits of the initial fraudulent scheme[12] do not satisfy the continuity element—Turner cannot rely on these acts to extend the pattern of racketeering activity. *See Gotham Print, Inc. v. Am. Speedy Printing Centers, Inc.*, 863 F. Supp. 447, 460 (E.D. Mich. 1994) ("When the Supreme Court spoke of the threat of repetition, it was referring to the threat of repeated *victimization* . . . , not merely the retention of the ill-gotten fruits of previous crimes."); *Vemco, Inc.*, 23 F.3d at 134 ("[Defendant's] conduct in sending out billing notices from 1991 through 1992 pursuant to an allegedly fraudulent contract cannot be cited by plaintiffs to extend the duration of the fraudulent scheme."); *see also Jennings v. Auto Meter Prods., Inc.*, 495 F.3d 466, 474 (7th Cir. 2007) (citations omitted) ("[A]ctions, even if themselves illegal, taken in an effort to cover up a criminal scheme 'do nothing to extend the duration of the underlying . . . scheme," and therefore do not establish the necessary continuity for a "pattern" of racketeering) (collecting cases). Accepting Turner's interpretation would

975.) Put simply, the alleged tax fraud stems from the same scheme of maintaining a fraudulent state civil case against Turner. (*Id.*)

[12] The Court finds that improperly claiming business expenses and tax deductions related to the Myers & Myers attorneys' allegedly unlawful conduct is analogous to concealing and benefiting from the fraudulent scheme.

allow any plaintiff once defrauded to state a RICO claim if defendants derived some kind of incidental benefit from the initial scheme (e.g., tax deductions) or committed any additional act to conceal the initial scheme (e.g., submitting subsequent false court filings to conceal initial, underlying wrongdoing)—an absurd result the case law does not support.

Because Turner fails to allege sufficient facts in his second amended complaint to establish a pattern of racketeering activity, his RICO claim cannot survive a Rule 12(b)(6) motion. Thus, amendment would be futile, and the Court **DENIES** Turner leave to file his second amended complaint.

### C. Third Motion to Amend

Turner also seeks leave to file a *third* amended complaint. (ECF No. 32.) The Court **DENIES** Turner's request to file a third amended complaint for the same reasons it denied his request to file a second amended complaint—the amendment would be futile where Turner does not remedy the above defects that are fatal to his RICO claim. (*See* ECF No. 35 (proposed third amended complaint)); *Rose*, 203 F.3d at 420 (citation omitted) ("A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss."). Turner does

little more than reiterate the same facts in greater detail and include "[a] more comprehensive listing of some of the potentially applicable provisions of the USC and MCL." (*See* ECF No. 32; *see also* ECF No. 34; ECF No. 35.) Therefore, Turner's first amended complaint remains the operative complaint in this action.

### D. Motion to Dismiss

Next, the Court turns to defendants' motion to dismiss. (ECF No. 17.) For the reasons stated in the Court's futility analysis, Turner's RICO claim, as alleged in the first amended complaint, is **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6). Because the RICO claim fails, the Court no longer has federal question jurisdiction in this case, and the Court declines to exercise supplemental jurisdiction over Turner's remaining state law claims. *See* 28 U.S.C. § 1367(c)(3) ("The districts courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]").

Finally, although Turner contends otherwise, the Court does not have diversity jurisdiction. Federal district courts may exercise

jurisdiction only over matters in which a federal question is raised and/or in which there is ***complete*** diversity between the parties (i.e. they are citizens of different states). *See* 28 U.S.C. §§ 1331, 1332. One of the fundamental requirements of diversity jurisdiction is complete diversity, meaning "that no party share citizenship with any opposing party." *Caudill v. N. Am. Media Corp.*, 200 F.3d 914, 916 (6th Cir. 2000); *see also Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005).

On May 12, 2025, the Court ordered Turner to show cause "why this matter should not be dismissed for lack of federal subject matter jurisdiction," and warned that lack of compliance would result in the complaint's dismissal. (ECF No. 11.) In relevant part, the Court found that "[b]ecause Turner shares citizenship with even one defendant, there is not complete diversity of citizenship and, consequently, the Court lacks diversity jurisdiction." (*Id.* at PageID.609.) In lieu of responding to the order to show cause, Turner filed the first amended complaint, alleging diversity jurisdiction because "Defendant Judy Wheeler has citizenship diverse from Plaintiff Turner." (ECF No. 14, PageID.636.) However, the same issue from his initial complaint remains: even if Judy Wheeler and Turner have diversity of citizenship, there is not *complete* diversity of

citizenship because Turner shares citizenship with the other defendants. Thus, contrary to Turner's assertions otherwise, the Court lacks diversity jurisdiction.

Because the Court lacks federal subject matter jurisdiction and declines to extend supplemental jurisdiction over the remaining state law claims, it **DISMISSES** Turner's complaint **WITH PREJUDICE**, and it need not address defendants' additional arguments for dismissal. As such, the Court also **DISMISSES AS MOOT** Defendant Judy Wheeler's motion to dismiss. (ECF No. 37.)

### E. Sanctions

On September 17, 2025, defendants moved for sanctions pursuant to Federal Rules of Civil Procedure 11(b)(1)–(3). (ECF No. 29.) For the following reasons, the Court finds sanctions are warranted.

Federal Rule of Civil Procedure 11(b), in relevant part, provides that "[b]y presenting to the court a pleading . . . or other paper . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief":

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

Fed. R. Civ. P. 11(b).

"The decision to award Rule 11 sanctions is within the discretion of the district court." *Teno v. Iwanski*, 464 F. Supp. 3d 924, 934 (E.D. Tenn. 2020) (citing *Orlett v. Cincinnati Microwave, Inc.*, 954 F.2d 414, 419 (6th Cir. 1992); Fed. R. Civ. P. 11 Advisory Committee Notes (1993) ("Advisory Notes")). In determining whether to impose sanctions, the court should consider "'whether the individual attorney's conduct was reasonable under the circumstances.'" *In re Triple S Restaurants, Inc.*, 519 F.3d 575, 579 (6th Cir. 2008) (citation omitted). This is "an objective standard of what a reasonable attorney would have done at that time." *Id.* (citation omitted). "A good faith belief in the merits of a case is insufficient to avoid sanctions." *Tahfs v. Proctor*, 316 F.3d 584, 594 (6th Cir. 2003) (citation omitted).

"If, after notice and a reasonable opportunity to respond, the court

determines that Rule 11(b) has been violated, the court may impose an appropriate sanction[.]" Fed. R. Civ. P. 11(c)(1). Still, the sanction "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. (c)(4). Rule 11 "de-emphasizes monetary sanctions and discourages direct payouts to the opposing party." *Rentz v. Dynasty Apparel Indus., Inc.*, 556 F.3d 389, 395 (6th Cir. 2009) (internal quotation marks and citations omitted).

The Court only addresses whether sanctions are warranted under Rules 11(b)(1), 11(b)(2), and 11(b)(3) as defendants only move on those grounds. The Court examines each argument in turn.

1. *Rule 11(b)(2)*

Defendants argue that sanctions should be imposed under Rule 11(b)(2) because Turner's legal theories are frivolous. (ECF No. 29, PageID.1241–1242.) "A legal contention is frivolous if it is 'obviously without merit' under existing law and unsupported by a good-faith argument to change or extend the law." *King v. Whitmer*, 71 F.4th 511, 528 (6th Cir. 2023) (citations omitted); *see also Lewis v. Sole L., PLLC*, 652 F. Supp. 3d 886, 893 (E.D. Mich. 2023) (internal quotation marks and

citation omitted) ("Rule 11 targets situations where it is patently clear that a claim has absolutely no chance of success.").

In arguing that Turner's claims have absolutely no chance of success, defendants rely on their arguments set forth in their motion to dismiss. (*See* ECF No. 29, PageID.1242 (citing ECF No. 17).) However, "[a] complaint does not merit sanctions under Rule 11 simply because it merits dismissal pursuant to Rule 12(b)(6)." *Tahfs*, 316 F.3d at 595. Because defendants rely on the reasons in their motion to dismiss for their Rule 11(b)(2) analysis, the Court refrains from granting the motion for sanctions on that basis and next turns to whether sanctions are warranted under Rule 11(b)(1).

2. *Rule 11(b)(1)*

Defendants also argue that sanctions should be imposed under Rule 11(b)(1) because the complaint was filed for an improper purpose: to harass defendants, coerce them into dropping the state court case against Turner, and increase the cost of litigation. (ECF No. 29, PageID.1238–1241.) The improper purposes of this litigation are apparent.

"The analysis of an improper purpose under Rule 11(b)(1) resembles the analysis of bad faith or an improper purpose under a court's inherent

power to sanction a party by shifting fees." *Teno*, 464 F. Supp. 3d at 953–954 (citing *BDT Prods., Inc. v. Lexmark Int'l, Inc.*, 602 F.3d 742, 752 (6th Cir. 2010)). Under that standard, "the court must find *something more* than that a party knowingly pursued a meritless claim or action at any stage of the proceedings." *BDT Prods., Inc.*, 602 F.3d at 753 (emphasis in original). As defendants note, "although a finding of bad faith is not a prerequisite to Rule 11 sanctions," a party continuing to prosecute a frivolous case after being alerted to its deficiencies may be evidence of bad faith. *Essroc Cement Corp. v. CPRIN, Inc.*, No. 1:08-cv-974, 2009 WL 2033052, at *23 (W.D. Mich. July 9, 2009) (citation omitted) ("'Bad faith may be inferred when the specific shortcomings of the case are identified by opposing counsel, and the decision is made to go forward despite the inability to respond to the arguments raised.'").

Here, Turner was alerted to deficiencies in his first amended complaint through defendants' motion to dismiss. (ECF No. 17.) Rather than respond to the arguments raised in the motion to dismiss, Turner attempted to file a second amended complaint without leave. (ECF Nos. 19, 21.) On July 11, 2025, this Court struck those filings, "instructed [Turner] to file his response brief by July 14, 2025, omitting his amended

complaint," and notified Turner "that any documents filed as a response to the motion to dismiss . . . which include pleadings other than his response brief SHALL BE STRICKEN as improperly filed." Still, Turner—an attorney acting pro se—filed an amended complaint and decided to move forward without responding to, or remedying, the defects in his case that defendants identified. And he did so despite the Court's express orders otherwise. As such, the Court finds "something more" than Turner merely pursuing a meritless claim or action. *BDT Prods., Inc.*, 602 F.3d at 753.

Moreover, Turner's own words and actions raise serious questions about his motivation in bringing this action and his intent to abuse the legal process to harass defendants. Defendants allege that when Dollar initially sought concurrence for the first iteration of their motion for Rule 11 sanctions, Turner "responded with a litany of threats, informing Attorney Dollar that instead of withdrawing his Complaint that Attorney Dollar would be buying [Turner] 'a brand new condominium, an addition to his house, a new car' and 'be put in jail' by the conclusion of this case." (ECF No. 29, PageID.1235; *see also* ECF No. 30-1, PageID.1371 (state court judge warned that "[t]here's no reason for [Turner] to be

threatening [Attorney Dollar] . . . if you said . . . you'll be home longer because you won't be an attorney anymore . . . those are fighting words").) Turner allegedly also claimed that he is "'seeking to pierce the attorney-client privilege' and that he will be taking the case 'to a jury trial' to show Attorney Dollar 'how real lawyering is done.'" (*Id.*) Critically, Turner does not deny these specific allegations. (*See* ECF No. 27, 28, 31.) Rather, Turner reiterates, once again, the lengthy factual background and underlying merits of his legal claims.

These uncontroverted comments indicate that the current litigation is motivated, at least in part, by a desire to increase the cost of litigation and a personal vendetta arising from the state court action. *See Teno*, 464 F. Supp. 3d at 953–954 ("[C]ourts have found an improper purpose based on . . . personal vendettas."); *see also Igbanugo v. Minnesota Off. of Laws. Pro. Resp.*, No. 21-CV-0105 (PJS/HB), 2021 WL 5216904, at *7 (D. Minn. Nov. 9, 2021), *aff'd sub nom. Igbanugo v. Minnesota Off. of Laws. Pro. Resp.*, 56 F.4th 561 (8th Cir. 2022) (finding improper purpose of retaliating against defendants for successfully pursuing a state court lawsuit in part because plaintiff "indicated that he would make it his mission in life to pursue [defendants] for their roles" in the state court

case and "used insulting language, threatened to seek sanctions, and took the opportunity to claim yet again that the [state court] case was frivolous"). Defendants' alleged actions during the state court litigation that constitute the legal basis of this action do not nullify such a finding.

3. *Rule 11(b)(3)*

Finally, defendants seek sanctions under Rule 11(b)(3), arguing that the factual contentions raised in the complaint are false and have already been adjudicated in the state court case. Specifically, defendants assert that the state court judge denied Turner's motion to dismiss the state court suit on the basis that Joseph Wheeler was incompetent or otherwise not the real party in interest. (ECF No. 29, PageID.1242–1243 (citing ECF No. 3-10; ECF No. 3-13).)

*Yousif v. JPMorgan Chase Bank, N.A.*, on which defendants rely, is illustrative. No. 2:19-CV-12344-TGB, 2020 WL 1324083 (E.D. Mich. Mar. 20, 2020). In *Yousif*, the plaintiff "was aware that the factual claim at the heart of [his] [c]omplaint had been determined to be baseless" by a state court before filing the federal court action. *Id.* at *2. Under such facts, the district court found plaintiff's conduct sanctionable under Rule 11(b)(3). *Id.*

Similarly, here, the state court judge rejected several of the factual claims and arguments that underlie Turner's legal claims in this litigation. The state court judge, for instance, denied Turner's motion for partial summary disposition (ECF No. 3-10; *see also* ECF No. 3-13), in which Turner argued that Joseph Wheeler is not the real party in interest and that Wheeler's state court claims against Turner must be dismissed based on lack of capacity or standing (ECF No. 3-11, PageID.260–264). Moreover, at an August 2025 status conference before the state court judge, Turner unsuccessfully attempted, once again, to advance the same arguments that had previously been rejected. (*See* ECF No. 30-1, PageID.1378–1385 (finding that Turner's ability to interact with Joseph Wheeler's guardian sooner is irrelevant and would not have resolved the case, and Judy Wheeler did not have personal knowledge of the case to be able to respond to discovery requests).) In fact, the state court judge clearly found that Turner's arguments related to the proper party in interest were frivolous. (*Id.* at PageID.1396.)

These very same factual claims are now largely the basis of this litigation. The abuse of process under Michigan common law claim, for instance, relies in part on defendants "[i]nitiating the [state court]

lawsuit without Judy Wheeler," without her prior knowledge or approval, and "[f]iling fraudulent discovery responses . . . all without the involvement of or knowledge of his existing lawfully appointed guardian." (ECF No. 14, PageID.655–656.) Similarly, the state law fraud claim alleges that the defendants "engaged in a fraudulent scheme to materially misrepresent the real parties in interests and legal incapacity of Joseph Wheeler" and that such actions "caused material compensable injury to Plaintiff Turner." (*Id.* at PageID.657–659.) The RICO claim also relies on defendants' "multiple related fraudulent pleadings, motions and other court filings and other related misrepresentations concerning the real parties in interest [and] related guardian appointments." (*Id.* at PageID.660.) Thus, as was the case in *Yousif*, Turner was aware that the factual claims underlying much of his complaint had been determined baseless by a state court *before* filing the federal action and *during* the federal action.

4. *Sanctions are warranted*

The Court concludes that Turner violated Rule 11(b)(1) and 11(b)(3), as discussed above, and thus finds that sanctions are warranted. Factors for a court to consider in deciding whether to impose Rule 11

sanctions include:

> Whether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; what amount is needed to deter similar activity by other litigants.

*Teno*, 464 F. Supp. 3d at 935 (quoting Fed. R. Civ. P. 11 Advisory Notes).

Most, if not all, Advisory Note factors weigh in favor of imposing sanctions against Turner. First, Turner's conduct was willful for the reasons stated above in the Rule 11(b)(1) and (b)(3) analysis. Turner was put on notice that many of his legal contentions are meritless by both opposing counsel and the state court, and Turner also disregarded the orders and rules of this Court. *See Stankevich v. Kaplan*, 156 F. Supp. 3d 86, 99 (D.D.C. 2016), *aff'd*, 707 F. App'x 717 (D.C. Cir. 2017) ("In addition to the substance of his legal arguments, [plaintiff] has been careless, uncooperative, and unpredictable as he has attempted to navigate these proceedings. Throughout this litigation, [plaintiff] has ignored dispositive motions filed by the defendants and disregarded fundamental

rules of civil procedure[.]"). Second, the second and fourth factors weigh in favor of imposing sanctions because Turner's conduct is a pattern in the state court litigation and this litigation as well. Third, his conduct has infected the entire pleading and subsequent amended pleadings and filings, as discussed above. Fourth, Turner's conduct was intended to injure for the reasons the Court stated in its Rule 11(b)(1) analysis and based on Turner's own uncontroverted statements. Fifth, in defending this action and an amended pleading that was filed without leave (and in contravention of this Court's express orders), this Court and defendants have expended considerable time and resources. Sixth, Turner is an attorney and should certainly know better. *See Stankevich*, 156 F. Supp. 3d at 100 ("As someone who holds a law degree, he will be held to a higher standard than other pro se plaintiffs.").

As such, the Court finds that an award of attorneys' fees and costs incurred by defendants beginning on July 12, 2025[13] is necessary to deter

[13] July 12, 2025 is when Turner filed his second amended complaint despite the Court explicitly ordering him not to file any document other than a response brief to defendants' motion to dismiss. The Court finds that using this date to mark what attorneys' fees and costs Turner owes defendants strikes the appropriate balance between Rule 11's general disfavor for monetary sanctions, *see Rentz*, 556 F.3d at 395, and deterring comparable conduct by Turner and others similarly situated.

Turner from continuing to abuse the legal process in this matter.[14] *See Igbanugo*, 2021 WL 5216904, at *7 ("Such an award will ensure that [plaintiff]—and not [defendants] (or their insurers)—bears the cost of his unethical conduct."). Central to this Court's finding is the fact that a state court already deemed the factual claims at the heart of Turner's complaint baseless. *Cf. Stankevich*, 156 F. Supp. 3d at 99 ("The Court will decline to impose sanctions on [plaintiff] at this time because although his claims against MC are thoroughly meritless, no court until now, has issued a ruling to that effect.").

Finally, defendants also request the Court order that Turner and his law firm: (1) post a bond of $50,000 prior to the filing of any appeal of this action; (2) post a bond of $50,000 prior to filing, in any court, an action against defendants related to or arising from the facts alleged in this matter; (3) post a substantial bond prior to filing an action in the Eastern District of Michigan; and (4) obtain certification from a magistrate judge that the proposed claims are not frivolous or asserted for an improper purpose before filing an action in the Eastern District of

[14] While the Court does not have information about Turner's financial resources at this time, it offers Turner an opportunity to respond to defendants' memorandum in support of their claimed attorneys' fees and costs, which will allow Turner to provide such relevant information. *See infra* Section V.

Michigan. (ECF No. 29, PageID.1248–1250.)

The Court declines to impose additional sanctions at this time given that this is Turner's first action in federal court related to this matter. *Cf. United States ex rel. Odish*, 843 F. App'x 748, 750 (6th Cir. 2021) (affirming district court's decision to prohibit plaintiff from filing any future documents in a case where plaintiff made over one hundred filings following dismissal, which contained thousands of pages; regularly sent emails and made calls to the court; and was undeterred by a prior injunction prohibiting him from making filings without leave of court). The Court does, however, strongly dissuade Turner against frivolous filings and actions as it will lead to further and harsher sanctions, including but not limited to prefiling restrictions.[15]

## V. CONCLUSION

For the reasons stated above, **IT IS ORDERED** that defendants' motion to strike the second amended complaint (ECF No. 23) is **DENIED IN PART AS MOOT AND GRANTED IN PART**. Specifically, any

[15] Defendants also request sanctions under 28 U.S.C. § 1927, which provides that attorneys' fees may be awarded where an attorney "so multiplies the proceedings in any case unreasonably and vexatiously[.]" (See ECF No. 23, PageID.1034–1035; ECF No. 33, PageID.1539–1540.) Because the Court addresses a similar argument in its Rule 11 analysis, it refrains from conducting a separate § 1927 analysis.

offensive language pertaining to Joseph Wheeler's mental health, including statements quoted above, is **STRICKEN.**

**IT IS FURTHER ORDERED** that Turner's requests to file a second amended complaint (*see* ECF No. 24) and third amended complaint (ECF No. 32) are **DENIED**.

**IT IS FURTHER ORDERED** that defendants' motion to dismiss (ECF No. 17) is **GRANTED** and this action is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Defendant Judy Wheeler's motion to dismiss (ECF No. 37) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that ECF No. 27, Turner's prematurely filed reply to defendants' motion for Rule 11 sanctions, is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that defendants' motion for Rule 11 sanctions (ECF No. 29) is **GRANTED IN PART AND DENIED IN PART**. Specifically**,** defendants' request for sanctions pursuant to Rule 11(b)(1) and Rule 11(b)(3) is **GRANTED** and defendants' request for sanctions pursuant to Rule 11(b)(2) is **DENIED**.

**IT IS FURTHER ORDERED** that, by **September 30, 2026**, defendants must submit affidavits and supporting documentation setting forth the attorneys' fees and costs that they have incurred in defending this action after July 12, 2025. Defendants may file a memorandum of no more than 1,500 words in support of their claimed fees and costs. Turner may file a response, by **October 21, 2026**, of no more than 1,500 words to defendants' memorandum. Turner's response may only address the issue of sanctions.

**SO ORDERED**.

Dated: August 21, 2026

**s/Jonathan J.C. Grey**
Jonathan J.C. Grey
United States District Judge

## **Certificate of Service**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 21, 2026.

**s/ S. Osorio**
Sandra Osorio
Case Manager